UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PENSION BENEFIT GUARANTY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>COMMERCIAL INVESTIGATION & ADJUSTMENT CO., INC.,<br><br>Defendant. | Civil Action No. 23-3097 (RK) (RLS)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon a Motion for Default Judgment filed by Plaintiff Pension Benefit Guaranty Corporation ("PBGC") against Defendant Commercial Investigation & Adjustment Co., Inc. ("Commercial Investigation"). (ECF No. 7.) The Court has considered PBGC's Motion and its accompanying submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, PBGC's Motion is **GRANTED**.

**I.  BACKGROUND**

This action arises under Title IV of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301–1461.

**A.  Statutory Framework**

PBGC is a wholly owned United States Government corporation established under 29 U.S.C. § 1302(a) within the Department of Labor to administer the pension plan termination insurance program created by Title IV of ERISA. (Complaint, ECF No. 1 ("Compl.") ¶ 1); *see also*

29 U.S.C. § 1302(a). Congress established PBGC to (1) encourage the continuation and maintenance of voluntary private pension plans for the benefit of their participants; (2) provide for the timely and uninterrupted payment of pension benefits to participants and beneficiaries under plans covered by Title IV of ERISA; and (3) maintain premiums at the lowest level possible. 29 U.S.C. § 1302(a).

ERISA authorizes PBGC to "make such investigations as it deems necessary to enforce any provision of this subchapter or any rule or regulation thereunder. . . ." 29 U.S.C. § 1303(a). For the purpose of such investigations, PBGC may "subp[o]ena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which [PBGC] deems relevant or material to the inquiry." 29 U.S.C. § 1303(b). Furthermore, ERISA provides: "In the case of contumacy by, or refusal to obey a subpoena issued to, any person, [PBGC] may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business, in requiring the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, and other records. The court may issue an order requiring such person to appear before [PBGC], or member or officer designated by [PBGC], and to produce records or to give testimony related to the matter under investigation or in question. Any failure to obey such order of the court may be punished by the court as a contempt thereof." 29 U.S.C. § 1303(b).

### B. Factual Background

Commercial Investigation is a New Jersey corporation that established a tax-qualified, defined benefit retirement pension plan (the "Plan") under Title IV of ERISA for the exclusive benefit of its employees. (Compl. ¶¶ 12–13.) Commercial Investigation is the administrator of the Plan within the meaning of 29 U.S.C. §§ 1002(16)(A) and 1301(a)(1). (*Id.* ¶ 14.)

In January 2018, PBGC received an email from Commercial Investigation representing that it was experiencing financial hardship and was unable to pay the premiums and contributions owed under the Plan or pay for an actuary. (*Id.* ¶ 15.) Accordingly, PBGC initiated an investigation pursuant to 29 U.S.C. § 1303(a) into Commercial Investigation's failure to make its statutorily required payments. (*Id.*) Between January 2018 and August 2022, PBGC attempted to work with Commercial Investigation "to resolve its financial hardship concerns and to discuss how Commercial Investigation will administer the Plan moving forward." (*Id.* ¶ 16.) On September 6, 2022, PBGC issued a subpoena to Commercial Investigation pursuant to its authority under 29 U.S.C. § 1303(b), requiring the production of previously requested documents and information by September 20, 2022. (*Id.* ¶ 17; Ex. C.)

The subpoena was served upon Mr. Douglas O'Neill at his last known home address. (*Id.* ¶ 18; Ex. A ¶ 3.) Mr. O'Neill is listed in the New Jersey Division of Revenue and Enterprise Services' database as the president of Commercial Investigation. (*Id.*, Ex. B.). Two days after the subpoena was served upon Mr. O'Neill, he contacted PBGC via telephone to discuss same. (*Id.* ¶ 19; Ex. A ¶ 9.) Thereafter, Mr. O'Neill followed up with an e-mail summarizing the conversation and explaining "that he would be working with an actuary to respond to the subpoena." (*Id.* ¶ 20; Ex. E.) In response, PBGC requested regular updates. (*Id.* ¶ 21; Ex. A ¶ 10.) On September 27, 2022, PBGC contacted Commercial Investigation requesting an update; Mr. O'Neill responded that he was still gathering the requested information. (*Id.* ¶ 22.) This was the last time that PBGC heard from Commercial Investigation before filing this petition to enforce the subpoena; PBGC attempted to contact Commercial Investigation on November 10, 2022, November 29, 2022, December 12, 2022, January 4, 2023, and January 12, 2023 without receiving a response. (*Id.* ¶¶ 22–23; Ex. A ¶ 12.)

On June 6, 2023, PBGC filed a petition pursuant to Section 1303(c) in this Court to enforce the administrative subpoena issued to Commercial Investigation. (*Id.* ¶ 4.) PBGC requested four forms of relief: (1) "an order directing Commercial Investigation to appear, through a duly authorized representative, before the Court, upon a day fixed by said order, and to show cause why the Court should not issue a subsequent order directing Respondent to fully comply with the subpoena"; (2) "[u]pon return of the order to show cause, . . . a subsequent order directing Commercial Investigation to produce any and all documents and records responsive to the subpoena to PBGC"; (3) an award of costs incurred by PBGC in maintaining this action; and (4) any other relief the Court deems appropriate. (*Id.* ¶ 24.) On June 13, 2023, PBGC filed an affidavit of service. (ECF No. 3.) On July 21, 2023, after Commercial Investigation failed to appear in this action, PBGC requested an Entry of Default, which the Clerk of the Court entered on July 24, 2023. (ECF No. 6.) Thereafter, on August 28, 2023, PBGC filed the pending Motion for Default Judgment. (ECF No. 7.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits a party to apply for and the court to enter default judgment against a party that fails to plead or otherwise defend claims asserted against it. Fed. R. Civ. P. 55(b)(2). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits . . . .'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)). "Because the entry of a default judgment prevents the resolution of claims on the merits, '[the Third Circuit] does not favor entry of defaults and default judgments.'" *Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at

*2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Before entering a default judgment pursuant to Rule 55(b), a court performs a thorough analysis of a plaintiff's claims and entitlement to relief. *First*, the defendant must have been properly served. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). *Second*, the court must have subject matter jurisdiction over the dispute and personal jurisdiction over the parties. *See Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017). *Third*, the complaint must sufficiently state a cause of action. *See Chanel, Inc.*, 558 F. Supp. 2d at 536 (citing *Directv, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). *Fourth*, the court must weigh the three default judgment factors: (1) whether the party subject to the default has a meritorious defense, (2) whether the party seeking default would be prejudiced without it, and (3) whether the default resulted from the defendant's culpable conduct. *Tri-Union Seafoods, LLC v. Ecuatorianita Imp. & Exp. Corp*, No. 20-9537, 2021 WL 1541054, at *7 (D.N.J. Apr. 20, 2021) (citing *Days Inns Worldwide, Inc. v. Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at *2 (D.N.J. July 24, 2015)). *Finally*, the plaintiff must have proven damages. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

### III.   DISCUSSION

#### A.   Proper Service

A court may only enter default judgment against defendants who were properly served. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985)). The plaintiff "bears the burden of proof on that issue." *Grand Entm't Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993) (citation omitted). The plaintiff can meet this

burden "by a preponderance of the evidence using affidavits, depositions, and oral testimony." *Mills v. Ethicon*, 406 F. Supp. 3d 363, 392 (D.N.J. 2019) (citation omitted).

Commercial Investigation is a corporation. (Compl. ¶ 2.) A corporation located in the United States may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B).

PBGC has established by a preponderance of the evidence that Commercial Investigation was properly served with the Summons and Complaint. PBGC filed an Affidavit of Service, indicating that Mr. O'Neill is Commercial Investigation's president and was personally served at his home address. (ECF No. 3; Compl., Ex. B; Ex. A, ¶ 3; *see also* ECF No. 7 ¶ 4.) PBGC also attaches, as an exhibit in support of its Motion, an email sent by Mr. O'Neill to PBGC's attorney on June 29, 2023, in which Mr. O'Neill acknowledges that he received the Summons. (ECF No. 7, ¶ 8; Ex. A ("I received your summons on Tuesday, June 14, 2023.").) Nothing in the record suggests that service was improper, and indeed Commercial Investigation has acknowledged that they know about this lawsuit. The Court therefore concludes that PBGC properly served Commercial Investigation in accordance with Federal Rule of Civil Procedure 4(h)(1)(B).[1]

### B. Jurisdiction

The Court next turns to whether it may exercise jurisdiction over the parties. "On a motion for default judgment, the Court takes as true all well-pleaded jurisdictional allegations in the Complaint to assess whether Plaintiff[] ha[s] made a prima facie showing of personal jurisdiction."

---

[1] *See Victory's Dawn, Inc. v. Clemons*, No. 21-9744, 2022 WL 3402491, at *3 (D.N.J. Aug. 12, 2022) (granting default judgment and finding proper service on LLC defendant because an individual was authorized to and did accept service on the LLC's behalf); *Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *3 (D.N.J. May 18, 2021) (granting default judgment and finding proper service on corporation because the complaint was served on the corporation's officer).

*Victory's Dawn, Inc.*, 2022 WL 3402491, at *3 (citing *Allaham v. Naddaf*, 635 F. App'x 32, 36–37 (3d Cir. 2015)). The Court has jurisdiction over this action pursuant to 29 U.S.C. §§ 1303(c) and (e)(3). As noted above, when PBGC initiates an investigation into a corporation and the corporation or its representative refuses to comply with a subpoena, ERISA authorizes PBGC to "invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or where such person or where such person resides or carries on business." 29 U.S.C. § 1303(c). Moreover, Section 1303(e)(3) provides that "[t]he district courts of the United States shall have jurisdiction of actions brought by the corporation under this subchapter without regard to the amount in controversy in any such action." 29 U.S.C. § 1303(e)(3).

In this case, PBGC alleges that Commercial Investigation is a New Jersey corporation. In support thereof, PBGC submitted a record from the New Jersey Division of Revenue and Enterprise Services, which shows that Commercial Investigation maintains its principal executive office at 3301 Route 66, Building C, 2nd Floor, Neptune, New Jersey, 07753. (Compl. ¶ 2; Ex. A ¶ 2; Ex. B.) Accordingly, PBGC has demonstrated that Commercial Investigation resides or carries on business within the jurisdiction of this Court, and thus jurisdiction over this matter is proper under 29 U.S.C. § 1303(c). *See, e.g.*, *Pension Benefit Guar. Corp. v. Panache Destination Mgmt.*, No. 21-80147, 2021 WL 5043118, at *3 (N.D. Cal. Sept. 10, 2021), report and recommendation adopted, No. 20-80147, 2021 WL 5037944 (N.D. Cal. Oct. 29, 2021), *and* report and recommendation adopted, No. 21-80147, 2021 WL 5050413 (N.D. Cal. Nov. 1, 2021) ("Here, PBGC has submitted a record from the California Secretary of State showing that Panache is an active California business whose address on file with the Secretary is in San Francisco, which shows that Panache resides or carries on business within the jurisdiction of this Court.").

C. **Sufficiency of Complaint**

The third factor the Court must consider is "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 365 (D.N.J. 2008); *see also Animal Science Prods., Inc. v. China Nat'l Metals & Minerals Import & Export Corp.*, 596 F. Supp. 2d 842, 848 (D.N.J. 2008) ("A litigant's failure to state a claim upon which relief may be granted . . . prevents the presiding court from entering a default judgment."). In order for a court to enter default judgment, a plaintiff must "establish[] that the essential elements of the pleaded claims are present and state[] factual allegations in support of these elements." *Animal Science Prods., Inc.*, 596 F. Supp. 2d at 848.

In this case, the Court must determine whether PBGC has stated a legitimate cause of action to enforce the administrative subpoena issued to Commercial Investigation. In the Third Circuit, judicial review of administrative subpoenas is "strictly limited." *Univ. of Med. & Dentistry of New Jersey v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003) (quoting *FTC v. Texaco*, 555 F.2d 862, 871–72 (D.C. Cir. 1977) (en banc)); *see also United States v. Nour Halal Meat Distrib., Inc.*, 505 F. Supp. 2d 275, 280 (W.D. Pa. 2007) ("It is well-established that administrative subpoena enforcement proceedings are summary in nature." (citation omitted)). "The ultimate inquiry . . . is whether the enforcement of the administrative subpoena would constitute an abuse of the court's process." *Univ. of Med. & Dentistry of New Jersey*, 347 F.3d at 65 (quoting *Wheeling–Pittsburgh Steel Corp.*, 648 F.2d 118, 127 n.12 (3d Cir. 1981)). A court should enforce an administrative subpoena as long as: (1) the investigation "has a legitimate purpose"; (2) the inquiry is "relevant to that purpose"; (3) the agency "does not already possess the information requested"; (4) the agency has "complied with relevant administrative requirements"; and (5) the demand is "not unreasonably broad or burdensome." *E.E.O.C. v. Kronos Inc.*, 694 F.3d 351, 362 (3d Cir. 2012), as amended (Nov. 15, 2012).

1. Lawful Purpose

PBGC satisfies the first requirement of the Third Circuit's test. 29 U.S.C. § 1303(a) provides that PBGC "may make such investigations as it deems necessary to enforce any provision of this subchapter or any rule or regulation thereunder, and may require or permit any person to file with it a statement in writing, under oath or otherwise as [PBGC] shall determine, as to all the facts and circumstances concerning the matter to be investigated." 29 U.S.C. § 1303(b) provides that "[f]or the purpose of any such investigation, or any other proceeding under this subchapter, the Director, any member of the board of directors of [PBGC], or any officer designated by the Director or chairman, may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which [PBGC] deems relevant or material to the inquiry." Thus, it is clear that Congress has granted PBGC the authority to conduct investigations and issue subpoenas for that purpose.

2. Relevance

The second requirement is that PBGC's inquiry is relevant to its lawful purpose. The Third Circuit has explained that the relevance requirement is "broad" and "not particularly onerous." *E.E.O.C. v. Kronos Inc.*, 620 F.3d 287, 296 (3d Cir. 2010). For example, for investigations conducted by the Equal Opportunity Employment Commission ("EEOC"), Courts "have traditionally allowed the EEOC access to *any* material that might cast light on the allegations against the employer." *Id.* (citations omitted) (emphasis added).

In furtherance of its investigation into whether Commercial Investigation has failed to make statutorily required payments, PBGC seeks information related to the Plan and to Commercial Investigation's financial condition. For example, PBGC's subpoena requests the Adjusted Funding Target Attainment Percentage ("AFTAP") or most recent Actuarial Valuation

Report, Plan amendments, changes in Plan population, amounts paid under the Plan, and the market value of Plan assets and contributions, and requests the financial records for Commercial Investigation and Mr. O'Neill, the company's president. (Compl. at *24, Ex. C.) It is clear that these straightforward requests are within the Third Circuit's broad definition of relevance. *See, e.g.*, *Pension Benefit Guar. Corp. v. Micfo, LLC*, No. 20-114, 2021 WL 6849084, at *2 (D.D.C. Mar. 2, 2021), report and recommendation adopted, No. 20-114, 2021 WL 6849088 (D.D.C. Mar. 17, 2021) (finding that PBGC's subpoena requests for information related to defendant's retirement plan and financial condition were relevant to PBGC's investigation of defendant's failure to make required contributions); *see also Panache Destination Mgmt.*, 2021 WL 5043118, at *4 (finding PBGC's subpoena requests relevant to PBGC's investigation of defendant's failure to pay premiums given the low standard for relevance in the Ninth Circuit even where the Court is "not well-positioned to definitively determine" relevance).[2]

3. Possession of Requested Information

The third requirement is that PBGC does not already possess the information requested. While PBGC provides minimal information pertaining to whether any of the requested documents are already in its possession, nothing in the submissions provided to the Court suggest same. As for PBGC's request for the AFTAP or most recent Actuarial Valuation Report, the subpoena itself states that "[t]he most recent in PBGC's possession is the 2016 Actuarial Valuation Report." (Compl. *24, Ex. C.) In addition, the subpoena affirmatively authorizes that Commercial Investigation need not produce any documents that have already been produced to PBGC. (*Id.* *23, Ex. C.) Given the Third Circuit's instruction that judicial review of administrative subpoenas

---

[2] The Court is not aware of any cases in the Third Circuit that have considered petitions to enforce administrative subpoenas filed by PBGC and thus turns to cases outside of this Circuit for guidance.

should be strictly limited and summary in nature, the Court concludes that this third requirement has been met.³

### 4. Compliance with Administrative Requirements

Next, the Court considers whether PBGC has complied with the relevant administrative requirements. ERISA expressly authorizes PBGC to "make such investigations as it deems necessary" and "require the production of any books, papers, correspondence, memoranda, or other records which [PBGC] deems relevant or material to the inquiry." 29 U.S.C. § 1303(a), (b). The text of ERISA does not impose any procedural requirements on the manner in which PBGC conducts investigations or issues subpoenas. Indeed, according to PBGC, "[n]either ERISA nor PBGC regulations require a specific means of service for administrative subpoenas issued by PBGC." (Compl. ¶ 11.)

However, the Court notes that, in pursuing this matter, PBGC "has proceeded in accordance with due process of law and the orderly administration of justice." *Panache Destination Mgmt.*, 2021 WL 5043118, at *3. PBGC served the administrative subpoena on Mr. O'Neill at his home address. (Compl. ¶ 18; Ex. D.) The subpoena provided fourteen (14) days to respond, (*id.* *18, Ex. C), which would have been sufficient time to respond if the subpoena had been issued by a federal court in a lawsuit, *see* Fed. R. Civ. Proc. 45(d)(2)(B). Mr. O'Neill acknowledged receipt of the subpoena but nonetheless failed to respond after PBGC contacted Commercial Investigation no less than six (6) times over the course of five (5) months requesting an update on Commercial Investigation's response to the subpoena. (Compl. ¶¶ 20, 22–23; Ex. E.) ERISA provides that "[i]n the case of contumacy by, or refusal to obey a subpoena," PBGC may invoke the aid of this Court in requiring compliance with the subpoena. 29 U.S.C. § 1303(b). The

---

³ Going forward, it would be helpful for PBGC to provide a clear, affirmative declaration certifying to the Court that it does not possess any of the documents requested pursuant to the administrative subpoena.

Court thus finds that any applicable procedural requirements have been followed in this case. *See, e.g., Panache Destination Mgmt.*, 2021 WL 5043118, at *3 (finding that ERISA imposes no procedural requirements and that PBGC proceeded in accordance with due process of law and the orderly administration of justice by properly serving a subpoena on the defendant's designated agent, providing fourteen (14) days to respond, and filing suit in the proper jurisdiction).

5. Breadth

The fifth and final requirement is that the subpoena issued to Commercial Investigation not be unreasonably broad or burdensome. As the Court noted above, PBGC's requests for information pertaining to the Plan and to Commercial Investigation's financial condition are relevant to Commercial Investigation's inability to make required payments. PBGC only requests the financial records for the last three years, (Compl. *24, Ex. C), and it does not appear as though the subpoena is unreasonably burdensome. In failing to respond to PBGC's petition in this action, Commercial Investigation has not argued otherwise. The Court also notes that when Mr. O'Neill acknowledged receipt of the subpoena, he informed PBGC that Commercial Investigation had retained a new actuary and was working with the actuary to gather the required documents and information. (Compl. *32, Ex. E.) Mr. O'Neill did not raise any concerns regarding the company's ability to collect the requested materials. The Court thus finds that PBGC's subpoena was neither overly broad nor unreasonably burdensome. *See, e.g., Micfo, LLC*, 2021 WL 6849084 at *2 (finding that PBGC's subpoena seeking information relating to the defendant's plan and financial condition was "neither too indefinite nor burdensome," especially in light of the defendant's failure to argue otherwise).

Accordingly, the Court concludes that PBGC has established a legitimate cause of action to enforce its administrative subpoena against Commercial Investigation in this Court.

### D. Default Judgment Factors

Next the Court considers the three default judgment factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). The Court finds that each of the three factors weighs in favor of entering default judgment in this case.

First, the Court's review of the law and the facts alleged in the Complaint reveals no meritorious defense open to Commercial Investigation. Of course, "evaluation of the first factor is made difficult by defendants' failure to answer or to oppose the motion for default judgment." *Loc. 365 Pension Fund*, 2021 WL 1976700, at *3. As explained above, the Court's role in reviewing administrative subpoenas is strictly limited. As long as PBGC can show that the investigation is conducted pursuant to a lawful purpose, the inquiry is relevant and not unreasonably broad or burdensome, the information requested is not already within PBGC's possession, and any requisite administrative procedures have been followed, a district court should enforce the subpoena. *See Univ. of Med. & Dentistry of New Jersey*, 347 F.3d at 64. Where, as here, the administrative subpoena does not constitute an abuse of the court's process, there is no meritorious defense available to Commercial Investigation.

The second and third factors also weigh in favor of granting default judgment. Commercial Investigation was served with the administrative subpoena and properly served with the Summons and Complaint in accordance with Federal Rule of Civil Procedure 4(h)(1)(B). Mr. O'Neill acknowledged, in writing, receipt of the subpoena, Summons, and Complaint but nonetheless failed to engage in this litigation in any way. (Compl. ¶¶ 20, 22–23; Ex. E; ECF No. 7 ¶ 8; Ex. A.) "It is clear that the plaintiffs have been prejudiced by this dereliction because they have been

13

'prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion.'" *Loc. 365 Pension Fund*, 2021 WL 1976700, at *5 (quoting *Teamsters Pension Fund of Phila. & Vicinity*, 2011 WL 4729023, at *4). Furthermore, "there is nothing before the Court to show that the Defendant[s'] failure to file an answer was not willfully negligent." *Teamsters Pension Fund of Phila. & Vicinity*, 2011 WL 4729023, at *4 (citing *Prudential Ins. Co. of America v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009)). In short, Commercial Investigation's unexplained failure to engage in this litigation notwithstanding its obvious awareness of same evidences its culpable conduct and the prejudice to PBGC if PBGC is not permitted to obtain relief through the Court entering default judgment.

### E. Remedies

While the Court accepts the Complaint's allegations as true, PBGC must nonetheless prove the amount of damages in order for the Court to enter default judgment in its favor. *See Comdyne I, Inc.*, 908 F.2d at 1149. In order to determine whether a plaintiff has sufficiently proven damages, Rule 55(b) permits the Court to "conduct such hearings or order such references as it deems necessary and proper." *Id.* (quoting Fed. R. Civ. P. 55(b)(2)). However, the Court is not required to conduct such hearings "as long as it ensures that there is a basis for the damages specified in the default judgment," *Trucking Emps. of North Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-2782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009) (citation and quotation marks omitted), such as when "detailed affidavits and documentary evidence" have been submitted to support the plaintiff's claim for damages, *Doe v. Simone*, No. 12-5825, 2013 WL 3772532, at *2–3 (D.N.J. July 17, 2013) (citation omitted). Furthermore, when a plaintiff seeks statutory damages, costs, and attorney's fees, a court may award damages without a hearing. *See Joe Hand Promotions, Inc. v. Waldron*, No. 11-849, 2013 WL 1007398, at *3 (D.N.J. Mar. 13, 2013).

In its Motion for Default Judgment, PBGC requests (1) an order directing Commercial Investigation to produce to PBGC any and all documents and records in response to the subpoena and (2) an award of costs in maintaining this action of in the amount of $1,088. (ECF No. 7 at 3–4.) PBGC is statutorily entitled to both forms of relief. First, the text of ERISA provides that the Court may issue an order requiring any person or corporation who refuses to obey a subpoena issued by PBGC to provide records in compliance with same. 29 U.S.C. § 1303(c). Subsection (c) even authorizes district courts to punish the failure to obey a PBGC subpoena as contempt of court. *Id.* Second, ERISA provides that PBGC is entitled the costs of litigation incurred by PBGC in connection with any action brought under Title IV. 29 U.S.C. § 1303(e)(5); *see also Micfo, LLC*, 2021 WL 6849084 at *2 (finding that PBGC was entitled to costs under 29 U.S.C. § 1303(e)(5) as the prevailing party on a petition to enforce an administrative subpoena).

PBGC attorney, Danielle E. Rodriguez, provided a declaration establishing PBGC's costs in maintaining this action. (ECF No 7-3.) PBGC seeks $1,088, which is based on sixteen (16) hours of Ms. Rodriguez's time billed at $57 per hour and two (2) hours of Assistant General Counsel Erika E. Barnes's time billed at $88 per hour. The Court finds PBGC's requested fees reasonable and that PBGC has adequately supported its claims for the time spent litigating this matter. Therefore, the Court grants PBGC's request for attorney's fees in the amount of $1,088 against Commercial Investigation.

## IV.     CONCLUSION

For the reasons set forth above, PBGC's Motion for Default Judgment, (ECF No. 7), is **GRANTED**. Default judgment is entered against Commercial Investigation. Commercial Investigation is **ORDERED** to produce any and all documents and records responsive to the subpoena to PBGC within thirty (30) days of entry of this Opinion, and PBGC is awarded costs incurred in maintaining this action in the amount of $1,088. An appropriate Order and Judgment accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: December 18, 2023